UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | **Criminal Case No. 1:17-CR-00110 (CRC)** |
| : | |
| **SAMUEL OGOE,** : | |
| Defendant. : | |

## FACTUAL PROFFER IN SUPPORT OF GUILTY PLEA

I.  Summary of the Plea Agreement

Samuel Ogoe agrees to admit guilt and enter a plea of guilty to Count One of the Indictment, which charges him with Conspiracy to Commit Theft of Trade Secrets. 18 U.S.C. § 1832.

Elements of the Offense

The essential elements of the offense of Conspiracy to Commit Theft of Trade Secrets, in violation of 18 U.S.C. § 1832, each of which the government must prove beyond a reasonable doubt, are:

1.  That an agreement existed between two or more persons to commit the crime of theft of trade secrets;

2.  That the defendant intentionally joined in that agreement;

3.  That the defendant knew the purpose of the agreement was to steal and transmit trade secrets without authorization to do so; and

4.  That one or more members of the conspiracy do any act to effect the object of the conspiracy.

The essential elements of the underlying offense of Theft of Trade Secrets, in violation of 18 U.S.C. § 1832, are:

1. That one or more defendants knowingly misappropriated information;
2. That the defendant knew or believed this information was proprietary;
3. That the defendant intended to convert a trade secret to the economic benefit of anyone other than the owner thereof;
4. That the trade secret is related to a product used in interstate commerce;
5. That the defendant knew or intended that the offense would injure any owner of that trade secret.

III. Brief Statement of the Facts

The following statement of facts does not purport to include all of the defendant's illegal conduct during the course of the conspiracy. Nor does it purport to be an inclusive recitation of all that the defendant heard, knew, or witnessed concerning the illegal activities of himself or those of his co-conspirators. It is intended to represent sufficient information for the Court to find a factual basis for accepting the defendant's guilty plea.

The government's evidence includes, but is not limited to, the following:

Samuel Ogoe is a naturalized U.S. citizen. Ogoe was previously employed by a company ("Company A") as a Materials Development Manager, where he had access to trade secret information. His employment with Company A ended in January 2012. Ogoe signed an agreement acknowledging he had been in contact with confidential and proprietary information and/or trade secrets of Company A, and that he would not reveal to any person, firm, or corporation any trade secrets or confidential information of Company A.

In October 2014, Kui Bo of CBMI located Ogoe's curriculum vitae online. CBMI and Ogoe communicated, and on November 6, 2014, and November 8, 2014, Ogoe sent PowerPoint presentations on drill riser buoyancy and sphere products to Bo. Shortly thereafter, CBMI sent Ogoe $2,000, for which Ogoe thanked Bo. Ogoe was offered a position with CBMI on December 15, 2014, which he accepted.

**Trade Secret 1**

On January 13, 2015, Johnny Randall, at that time an employee of Company A, emailed Ogoe at Ogoe's request, attaching several files, including an Excel spreadsheet with two tabs titled "Bead burst and density." The spreadsheet contained information about the types of spheres needed to create syntactic foam of particular densities and the burst pressure for such spheres in pounds per square inch, which is Trade Secret 1 in the Indictment. The spreadsheet also contained Company A's logo. On January 28, 2015, Ogoe emailed Shi the spreadsheet containing Trade Secret 1. In the email, Ogoe stated, "Attached contains the density formula for various spheres diameters. Please let me know if you need additional information." Ogoe removed Company A's logo from the attached spreadsheet before sending it to Shi.

**Trade Secret 2**

On January 14, 2015, Uka Uche, at that time an employee of Company A, emailed Ogoe at Ogoe's request an excel spreadsheet entitled "MIDIS Density 2015." The excel spreadsheet contained the density of different 10mm macrospheres, including the performance of specific spheres pulled from a specific batch. Company A tested spheres for diameter and weight, with the results averaged to represent the entire batch. Company A's density calculations are Trade Secret 2 in the Indictment. Company A's density calculations would provide a competitor key information about the performance of a certain batch of Company A's macrospheres and

benchmarks to meet in the production of the competitor's macrospheres. Access to such density calculations at Company A was password protected and restricted to a small number of Company A employees. On March 5, 2015, Ogoe sent Bo a version of the spreadsheet containing Trade Secret 2, with new data, along with a Word version of the document described below under "Trade Secret 3."

**Trade Secret 3**

On January 30, 2015, Uka Uche emailed Ogoe at Ogoe's request an email with the subject "Test procedure." Attached was a PowerPoint document containing information about a Hydrostatic Crush Pressure test, a necessary quality control measure, which was Trade Secret 3 in the Indictment.

The PowerPoint document included printed warnings against use or disclosure. On March 20, 2015, Ogoe emailed individuals including Shi and Bo, stating the 10mm carbon coated sphere densities for the hydrostatic burst pressure test in China were attached. Ogoe included a word document entitled "Hydrostatic Burst Pressure Test Procedure," which contained Trade Secret 3 information taken from the PowerPoint document, but with the Company A logo and warnings removed, as well as other Company A data. Ogoe was aware that Trade Secret 3 was sent to China so that the Test Procedure could be used to test spheres. On March 21, 2015, Bo forwarded Ogoe's March 20, 2015 email to Hui Huang in China. Huang emailed Bo on March 26, 2015, stating "Attached is the pressure testing report for 10mm carbon coated spheres." Bo forwarded that email back to Ogoe.

Ogoe as part of his duties at CBMI traveled to China to help establish a CBMF factory. Ogoe was hired by CBMI in December 2014 for a salary of $100,000, in addition to the $2,000 he received prior to being hired.

Respectfully submitted,

Jessie K. Liu
United States Attorney

BY: /s/ Jeffrey Pearlman

Jeffrey Pearlman
Thomas N. Saunders
Assistant United States Attorneys

Joss Nichols
Special Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I have read this factual proffer, understand it, and agree that it is true and accurate. While it is not a complete recitation of all that I did or all that I know, it represents some of my conduct and some of my knowledge concerning my own involvement in illegal activity as well as the activities of some of my co-conspirators. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this factual proffer fully.

Date: 10/17/18

_____
Samuel Ogoe

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting this factual proffer, reviewed them with my client, and discussed them with my client.

Date: 10-17-18

_____
Danny Onorato, Esquire
Counsel for Defendant